# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**GREGORY A. SLATE**
**35 BRYANT STREET, NW**
**WASHINGTON, DC 20001**

*Plaintiff*

v.

**DIOP KAMAU (AKA Donald Carlos Jackson)**
**9217 HAMPTON GLEN COURT**
**TALLAHASSEE, FL 32312**

and

**TYRA FERRELL (AKA Tyra Rasmus)**
**9217 HAMPTON GLEN COURT**
**TALLAHASSEE, FL 32312**

and

**TELITHA ENTERTAINMENT CORP. (DBA Telitha Inc)**
**TYRA FERRELL, REGISTERED AGENT**
**9217 HAMPTON GLEN COURT**
**TALLAHASSEE, FL 32312**

and

**GOOGLE LLC (DBA YouTube and Blogspot/Blogger)**
**CORPORATION SERVICE COMPANY, REGISTERED AGENT**
**251 LITTLE FALLS DRIVE**
**WILMINGTON, DE 19808**

*Defendants*

Case No.: 4:21-cv-00390-MW-MJF

Chief Judge Mark E. Walker

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT

## INTRODUCTION

1.     Plaintiff seeks to enjoin those Defendants Kamau, Ferrell, and Telitha from: posting defamatory material about Plaintiff on Defendants' websites such as "lifesentenceontheinternet.com" and the newly discovered "GregSlate.org;" mass mailing flyers or other communications to Plaintiff's neighbors and associates, containing defamatory material next to copyrighted images of Plaintiff; and otherwise using libel, slander, impersonation, and Plaintiff's private copyrighted images to harass him.

2.     Over the course of more than thirteen years, and in the face of several court orders, criminal warrants, and contempt orders, Defendants have persisted in their campaign explicitly designed to harm and ruin Plaintiff.  And in recent years, this has involved Defendants' augmented schemes, involving use of their websites, which, unprompted by Plaintiff, have still increased in volume, and in abuse and improper/unauthorized use of Plaintiff's private photographs as well as videos defamatory to Plaintiff.  Not only did Defendants display these photographs, videos, and defamation online, but also mailed them to Plaintiff's personal and professional acquaintances, family, and neighbors. Defendants have also obtained confidential portions of Plaintiff's private medical records that they publish on the internet and in mass mailings.  And by various other means (impersonation, use of fabricated documents), such as Defendants' use of telephone calls and messages to law

enforcement officials, attempting to incite retaliation against Plaintiff.

3.      Further, with his Amended Complaint, Plaintiff seeks injunctive relief and damages against Google LLC as a result of its failure to honor its responsibilities under the Digital Millennium Copyright Act ("DCMA") by ignoring repeated valid notices of infringements using its servers and for the ongoing infringement of Plaintiff's copyright by hosting through its BlogSpot hosting and YouTube services, the        infringing        images,        videos        and        website        at: https://www.lifesentenceontheinternet.com.[1]

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright), 28 U.S.C. § 1367(a) (supplemental), and 28 U.S.C. § 1332 (diversity).

5.      This Court has personal jurisdiction over Defendants because, among other things, Defendant Ferrell, Kamau, and Telitha reside in this District.  Google, LLC, regularly conducts business with Defendant Ferrell, Kamau, Telitha, and many others in this District by, *inter alia*, hosting the infringing and defamatory websites at issue that are registered in Tallahassee, FL.

## PARTIES

---

[1] Since filing this litigation Plaintiff has discovered a number of other infringing and defamatory material posted by Defendants Ferrell and Kamau and hosted by Google at: https://gregslate.blogspot.com/, http://1serialstalker.blogspot.com/, http://janesebechtol.blogspot.com/, http://courtroomworkgroup.blogspot.com/, https://youtu.be/o8UZicL4pCY, https://www.youtube.com/watch?v=ur2dUUmO8yw, https://www.youtube.com/watch?v=gyhnNI4r8Nc, https://www.youtube.com/watch?v=VyV_UCzD-Ms, https://www.youtube.com/watch?v=ur2dUUmO8yw&t=58s, and https://www.youtube.com/watch?v=o8UZicL4pCY (hereinafter, the "Newly Discovered Website").

6.     Plaintiff Slate is an Emmy award-winning investigative journalist and former practicing attorney who maintains his primary place of business in Washington, D.C.

7.     Defendant Diop Kamau is an individual. Upon information and belief, he is a citizen of Florida and resides in Tallahassee.

8.     Defendant Tyra Ferrell is an individual. Upon information and belief, she is a citizen of Florida and resides in Tallahassee.

9.     Defendant Telitha Entertainment Corp. (DBA Telitha Inc) is a Florida corporation with principal offices in Tallahassee, Florida. It may be served at the address of its registered agent, Tyra Ferrell, at 9217 Hampton Glen Court, Tallahassee, Florida 32312.

10.     Defendant Google LLC is a Delaware limited liability company with principal offices in Mountain View, California. It may be served at the address of its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 29808.

**FACTUAL BACKGROUND: INITIATION OF THEIR CAMPAIGN AND OUTRAGEOUS CONDUCT AGAINST THE PLAINTIFF**

A. Defendant Kamau and Ferrell's Outrageous Conduct Includes Vile False Criminal Claims, Identity Theft, Forgery of Official Documents, and Persistent Violations of Prior Court Order Against Them

11.     Defendants Kamau and Ferrell are husband and wife who own and operate numerous websites, blogs, and YouTube channels that promote conspiracy theories about and otherwise malign individuals and organizations with whom they have grievances, such as their former attorney, Defendant Kamau's former employer, his former clients, and Plaintiff.[2]

12.     Beginning around March 2008 and continuing to this day, Defendants create websites and internet posts fabricating a bizarre range of narratives, accusations, and claims against Plaintiff. These would begin with false accusations ranging from Plaintiff being a sophisticated "computer hacker" to a "police informant," and expand to false claims of various criminal activity and criminal investigations ranging from computer hacking to child pornography to extortion to arson, and morph into their present-day form that goes so far as to include even murder.  Defendants advance and disseminate these fabrications by mass mailings, mass phone calls, impersonations of Plaintiff by phone, false filings, false reports, and various other means, such as via distribution of a forged court document.

---

[2] Defendant Kamua and Ferrell target their victims by purchasing domain that include their names (e.g., gregslate.org, gregslate.tv, StuartGnash.Com, and janesebechtol.com) so that the defamatory websites are the first websites listed when the victim's name is search on Google or other internet search engines. In the case of the Plaintiff, Defendant Kamau and Ferrell also published defamatory material about Plaintiff at obscene domains Defendants purchased to harass Plaintiff, including: Copyrightthisbitch.com, Itsfatassbyanose.com, Stankymotherfucker.info, Fuckingcoward.tv, Youfuckingcoward.com, Stankymotherfucker.com, Cyberstalker.info, Cyberstalker.tv, Punkassbitch.tv, and Stinkymotherfucker.com.

13.     In a campaign via mass phone calls, after obtaining a list of telephone numbers of Plaintiff's friends, family, and associates, Defendants Ferrell and Kamau began calling all of them with strange, threatening, and false messages.   Among those, Defendant Ferrell left messages falsely claiming that Plaintiff distributed an "inappropriate" photo of their underage daughter. *See* Electronic Case Filings Number (ECF No.) 14-2.

14.     Plaintiff has never taken, let alone posted inappropriate photographs of a child on the internet. No individual, business, or any entity—other than Defendants—has ever made any such a claim against Plaintiff. And in the decade and more since Defendants first made this hideous accusation against Plaintiff, he has never been contacted by law enforcement concerning the allegation, and Plaintiff remains unaware of Defendants' having ever been able or willing to produce any "inappropriate" photos, which they claim Plaintiff posted on the internet.

15.     Defendants Kamau and Ferrell also left messages to various recipients misrepresenting themselves as Plaintiff—including to government entities, with messages to law enforcement to incite action against Plaintiff as well as to entities such as Baltimore City Housing Department—an agency that oversees enforcement of housing codes where Mr. Slate owns several buildings.

16.     Defendant Kamau recorded himself impersonating Plaintiff in calling the latter, on which both Defendants Kamau and Ferrell are heard laughing after

6

leaving the message: "The message is from Greg Slate, and just tell her that I am not doing anything and to stop calling me. You just let her know that, okay?"

17.    To describe a particularly egregious example, which Defendants' have maintained from the start of their campaign and continuing through the present, Defendants have distributed a falsified and fictitious court document titled "Complaint for Confessed Judgment," which purports to have been filed against Plaintiff and his brother in the District Court for Baltimore City in a "Case No. 07CV2089" by Chase Manhattan Bank USA, N.A. (hereinafter, the "Forged Judgment").

18.    The Administrative Clerk of the Baltimore City District Court has confirmed in writing that:

> "07CV2089 is not a valid case number with the District Court of Maryland for Baltimore. The District does not have any record of any matter titled 'CHASE MANHATTAN BANK USA, N.A. vs. GREGORY A. SLATE' or 'CHASE MANHATTAN BANK USA, N.A. vs. JONATHAN JOHNSON.' A 'COMPLANIT *[sic]* FOR CONFESSED JUDGEMENT' bearing number 07CV2089 has never been filed with this court."

19.    The Forged Judgement contains the address and phone number of Attorney Geoffrey S. Mitchell below a signature that purports be the "Signature of Plaintiff/Agent/Attorney."

20.    Attorney Geoffrey S. Mitchell confirmed the Forged Judgment is a doctored fake document, writing that it:

"was not authorized, prepared or filed by me.  I have not for many, many years represented Chase Manhattan Bank or any successor-in-interest to that bank.  I have not authorized any person or Chase Bank to use my name and telephone number.

The use of my address and telephone number in connection with this pleading is a fraud on the Court."

21.   A mass email containing the Forged Judgment was sent from "evidence@policeabuse.com" by Defendant Ferrell, who introduces herself by writing:

"I am an actor with an extensive list of credits.  You can verify who I am here, www.tyraferrell.com."

22.   Notwithstanding the irrefutable evidence that the Forged Judgment is fake, Defendants have used without abatement in mass mailings to Plaintiff's family, friends, and various individuals affiliated with Plaintiff.  And Defendants distribute the Forged Judgment to this day, including on the Policeabuse.com Scribd account where it can be viewed.[3]

23.   The conduct described above is only a tiny sampling of Defendant Kamau and Ferrel's outrageous behavior directed at Plaintiff, more of which is described in the separate intentional infliction of emotional distress counts below both tailored to Defendant Kamau and Ferrell specifically. One fact that makes the conduct by these two defendants even more extreme is that much of it was carried

---

[3] *See* https://www.scribd.com/doc/234805835/28742559-Judgement-Greg-Jonthan (last visited January 3, 2022)

out while they were each under court order to cease contacting and creating websites about Plaintiff. In outrageous defiance of these court orders, Defendants persisted resulting in a warrant for criminal contempt being issued for Defendant Kamau, and Defendant Ferrell being held in contempt of court.

24.     In line with their past conduct of flouting court orders, Defendants Kamau and Ferrell have carried on their harassment campaign, even after the filing of this lawsuit, with new tortious conduct going to Plaintiff's new claims for defamation invasion of privacy and tortious interference, and copyright infringement as outlined below.

### B. 2019 MASS MAILING OF DEFAMATORY FLYERS WITH PLAINTIFF'S COPYRIGHTED PHOTOS

25.     Like most people, throughout Plaintiff's life, he has taken self-portraits or "selfies" while on vacation, traveling, and for various other reasons or no reason at all.

26.     Plaintiff copyrighted some of the photos he has taken of himself with the U.S. Copyright Office under the title "Self Photos 1999-2016" (the "Self-Portrait Copyright").

27.     Throughout 2019, hundreds of envelopes began arriving addressed to tenants and neighbors of buildings owned by Plaintiff in the District of Columbia and Maryland.

28.     The upper left-hand corner of the envelopes reads: "Know Your

Neighbor Campaign- Renter Alert Attorney Gregory Slate Google My Name." See ECF No. 1-2.

29.    By instructing the recipients to "Google My Name," the envelopes advertised lifesentenceontheinternet.com because anyone who googled Gregory Slate was then directed to the first search result: https://www.lifesentenceontheinternet.com/ "Greg A. Slate - A Notorious Conman"

30.    Inside the envelopes were flyers with Plaintiff's photo contained in the Self-Portrait Copyright along with demonstrably false claims about Plaintiff.

31.    One version of the flyer appears to be a copy of a letter Kamau sent law enforcement falsely claiming, "Slate sued ABC news. The case was thrown out of court and Slate was convicted of perjury and fraud." [emphasis added].

32.    Plaintiff has never been charged with perjury or fraud, much less convicted of any such crime.

33.    Among the many false claims also printed on the flyers are:

"2. Attorney Slate has been the subject of 15 stalking restraining orders.
3. Attorney Slate installs hidden cameras in the bedrooms and bathrooms of renters.
4. Attorney Slate uses the Wi-Fi of his renters to gain access to their computers and personal devices." (color in original)  See ECF No. 1-2.

34.    Another version of the flyers, which Defendants mailed to Plaintiff's friends, family, neighbors, and tenants, claims, "He was selling meth from the home he was managing as an unlicensed landlord in the District of Columbia."

35.     To be clear, there is no factual basis for any of the claims in Defendants' flyers discussed herein.

### C. KAMAU'S 2020 LETTER FALSELY CLAIMING PLAINTIFF IS A CONVICTED FELON

36.     On May 22, 2020, Defendant Kamau sent and published on "policeabuse.com" (hereinafter, the "Kamau Website") a letter to Mayor Muriel Bowser signed "Don Jackson" with "a.k.a. Diop Kamau" printed under the signature.

37.     Defendant Kamau's letter to Mayor Bowser asserts a bizarre "cover up" by MPD, the U.S. Attorney's Office, the D.C. Attorney General Office, and D.C. Bar Counsel. See ECF No. 11-4.

38.     Among other things, Defendant Kamau's letter falsely asserts that Plaintiff had been placed "on probation for a felony hit-and-run accident, and he had two prior DUI convictions."

39.     Defendant Kamau falsely asserts in his May 22, 2020 letter that "Mr. Slate was under the care of a psychiatrist for anger management as part of his probation for a felony hit and run, when he began receiving help from the MPD and Ms. Connell."

40.     Plaintiff has never been convicted of any felony, so it is impossible that he was ever on "probation for a felony."

D. *2020 INTERNET PUBLICATIONS: FALSE ASSERTIONS PLAINTIFF WAS "CONVICTED" OF PERJURY, FRAUD, & WITNESS INTIMIDATION WHILE INFRINGING PLAINTIFF'S COPYRIGHT*

41.     Defendant Ferrell is the original registrant, owner, and operator of "lifesentenceontheinternet.com" ("Ferrell's Website").

42.     On or about October 27, 2020, Defendant Ferrell re-registered the domain "lifesentenceontheinternet.com" ("Ferrell's Website") in the name of "Telitha Inc."

43.     Defendant Ferrell and Telitha re-published Defendant Kamau's May 2020 letter on Ferrell's Website.

44.     Defendant Ferrell and Telitha posted Kamau's May 2020 letter along with allegations of a new false and bizarre conspiracy by Plaintiff, the DC Attorney General's Office, the Metropolitan Police Department, and others to "frame" the Defendants, and claims the "DC Office of Bar Counsel covered-up the misconduct to protect the prosecutors."

45.     Ferrell's Website falsely claims that all of Plaintiff's prior successful legal efforts to end Defendants' persistent harassment were part of a vast conspiracy by judges, prosecutor, police, their own attorney, and Plaintiff.

46.     Specifically, Ferrell's Website falsely asserts, "one year after being convicted of perjury, fraud, and witness intimidation by a federal court, Gregory Slate was granted a license to practice law in the state of Maryland," and falsely

claims, "In a legal case where Slate was convicted of perjury Slate told attorneys representing ABC News Corp. that the row house depicted in the photo above was his property in Baltimore, Maryland."

47.   Defendant Kamau then published a website nearly identical to Defendant Ferrell's Website at the Kamau Website.

48.   Defendant Ferrell's Website asserts verbatim the false claim concerning Plaintiff placing hidden cameras in his tenants' bathrooms and publish the same copyrighted personal photograph of Plaintiff printed on the flyers mass-mailed to Plaintiff's neighbors and associates.

49.   The Kamau Website also asserts verbatim the false claim concerning Plaintiff placing hidden cameras in his tenants' bathrooms and publish the same copyrighted personal photograph of Plaintiff printed on the flyers mass-mailed to Plaintiff's neighbors and associates.

50.   In addition to repeatedly falsely claiming Plaintiff is convicted of felony and perjury, the Ferrell's Website also falsely claims that Plaintiff was:

a.   "on probation for a felony hit and run with three DUI arrests (2 convictions) when he appeared at the DC AG's DV Unit."

b.   held in the DC jail on "a probation revocation for a felony hit and run conviction in Virginia."

c.   "on probation for a felony hit-and-run accident when he enlisted the support of two prosecutors working in the Attorney General's domestic violence unit, to assist him in his fraud."

13

51.    The Kamau Website asserts verbatim the same false claims quoted in a-b above.

52.    The Kamau Website falsely claims Plaintiff "was on probation for a felony hit and run accident, and multiple DUI's […]."

53.    Ferrell's Website links to another letter from Defendant Kamau, including false statements upon false statements in the form of some sort of narrative:

a.    "'Slate was convicted of fraud, perjury, and witness intimidation for litigation misconduct and for the false legal filings submitted by Assistant Attorney General Sarah Connell and Assistant Attorney General Janese Bechtol. According to Judge Beryl Howell Slate used Bechtol and Connell's legal filings to intimidate witnesses.'

b.    'One year after Bechtol's false charges against my wife were dropped Slate was convicted of perjury and other crimes that included using the office of the Atty. General as an instrument in multiple acts of witness intimidation. From the federal court ruling of Judge Beryl Howell[.]'"

54.    The Kamau Website links to the same letter.

55.    Plaintiff's personal and private photographs in the Self-Portrait Copyright, including photos of Plaintiff when he was a minor while in a shower stall, are published on Ferrell's Website.

56.    The Kamau Website the same personal and private photographs in the Self-Portrait Copyright.

57.    Ferrell's Website publishes videos, some which are narrated by Defendant Ferrell while displaying the Plaintiff's Self-Portrait Copyright.

14

58.     The Kamau Website published the same videos narrated by Defendant Ferrell.

59.     On December 7, 2020, a law firm representing Plaintiff sent Defendants Ferrell and Kamau a letter explicitly notifying them as to their defamatory and infringing conduct and demanding that they cease and desist the same.

60.     Defendants Ferell, and Kamau persist in their defamation and infringement. Anyone who searches Plaintiff's name on the internet is misled that Plaintiff has been convicted of various serious felonies and is a prolific computer hacker and otherwise a threat to the community.

E.  *Kamau and Ferrell's January 2021 Conspiracy to Public Defamatory and Infringing Material at StuartsGnash.Com*

61.     In and around early January 2021, Defendants Ferrell and Kamau, continuing to act in concert and with a common cause, re-registered the domain StuartGnash.Com (hereinafter, the "Judge Gnash Site").

62.     Near the top of the Judge Gnash Site, Defendants Ferrell and Kamau publish the false assertion: "Alecia Wheeler a D.C. mother of 4 murdered because of a fraud by Greg Slate."

63.     Defendants make this vile claim about Plaintiff knowing full well that Plaintiff has absolutely no connection with the murder victim, or, incidentally, the individual who plead guilty to her murder.  *See United States v. Kinney*, No. 11-

CF1-17987, Plea & J. (D.C. Super. Ct. October 25, 2011).

64.     A letter that appears at the Judge Gnash Site begins with "Hello I am Tyra Ferrell" above a photo of Defendant Ferrell. The letter falsely asserts:

> a.     "The police and our computer technicians have determined that Greg Slate has been uploading inappropriate photographs of our eight-year-old daughter from various computers throughout Virginia, Baltimore, Maryland and the District of Columbia."

> b.     "In addition to academic fraud, Greg has committed a series of crimes. They include mail fraud, arson, adulterating a police officer's food in Pineville North Carolina, stealing court records during his mother's foreclosure directly from the courthouse in Charlotte, North Carolina and identity theft in four other states."

> c.     "Greg is an insensitive and dangerous sociopath."

65.     Given that Plaintiff has no history with any of the various crimes Defendants cite, no one other than Defendants have ever leveled such accusations. Unequivocally, Defendants' intent is solely to harm Plaintiff with such extreme claims—personally, professionally, emotionally, legally, and any number of other ways in which such vile accusations might result.

66.     Another such example is the false claim on the Judge Gnash Site that states: "Former Attorney Slate operates an insurance fraud ring out of Baltimore."[4]

67.     The Judge Gnash Site falsely claims: "Attorney Slate hacked into the

---

[4] The same false claim appears verbatim at JANESEBECHTOL.BLOGSPOT.COM

email accounts of opposing ABC witnesses to plant evidence and frame witnesses ahead of their scheduled testimony."

68.    Defendant "hacking" allegation on the Judge Gnash websites is part of a continuing pattern by the Defendants over this past decade and more to falsely claim Plaintiff is a hacker, so they may blame their inability to produce any evidence to support any of their claims against Plaintiff on their fabricated allegation he "hacked" their computers and deleted the only copies. Plaintiff is aware that Defendant Kamau has filed numerous police reports with various law enforcement agencies claiming Plaintiff has hacked the computers of banks, law offices, state judiciary websites, and even accessed "email passwords for confidential DNC data, and Democratic National Committee database access codes."  Defendants claim to have reported this alleged hacking by Plaintiff to the FBI for more than five years, claims that remain uncorroborated by any action or communication to Plaintiff by the FBI or any law enforcement agency.

69.    These hacking allegations have continued even after the filing of this lawsuit when Defendant Kamau filed a state court lawsuit against Plaintiff claiming he is "hacking into [Kamau's] home network, including his private and business computers, deleting files and "planting" new files into his computers, turning appliances on and off in [Kamau's] home, and changing passwords on [Kamau's] devices, accounts and Youtube channels."

17

70.    In a subsequent amendment to the above-described state court complaint, Defendant Kamau again relied on his false hacking claims in an attempt to explain why he could not produce an alleged contract supposedly signed by Plaintiff, asserting, "A true and correct copy of the signed version of the Contract cannot be located by Mr. Kamau, since the computer and server were hacked[.]"

71.    On information and belief, the state court complaint and the subsequent amendments filed by Defendant before this Court was made in bad faith solely to harass Plaintiff in retaliation bringing the instant lawsuit.

72.    Plaintiff has never hacked into anyone's email account, planted evidence, or framed witnesses, and has never been accused of hacking anything by the various institutions Defendants Kamau asserts Plaintiff hacked.

73.    The Judge Gnash Site falsely claims: "Attorney Slate was on probation for a felony hit-and-run accident when he enlisted the support of two prosecutors working in the Attorney General's domestic violence unit, to assist him in his fraud."

74.    Below a photograph of Plaintiff holding his Emmy Award, which is contained in the Self-Portrait Copyright, appears the false assertions that the picture is: "Attorney Slate posing with a fake Emmy award."

75.    The Emmy Award appearing in Plaintiff's copyrighted photograph displayed on the Judge Gnash Site is not fake but is, in fact the real Emmy Award that was bestowed on Plaintiff by the Chicago/Midwest Chapter National Academy

18

of Television Arts & Sciences for "Outstanding Achievement within a Regularly Scheduled News Program – Investigative Series" in his capacity as a producer.

76.     Defendants also falsely claim on the Judge Gnash Site that:

> "Attorney Slate has never written, published, or produced anything in his entire life. He has used the phony award for years to gain the confidence of his clients and unwitting fraud targets. Courthouse News describes how Slate used the fake Emmy award in his litigation with ABC News."

77.     Plaintiff has never used a "phony" or "fake Emmy award" in any fraud, and Plaintiff certainly did not use a "fake Emmy award in his litigation with ABC News."

78.     Below a photo of Judge Gnash appears the false allegation that: "Judge Nash [sic] also allowed Gregory Slate to testify falsely."

79.     The Judge Gnash Site, the latest version of which purports to have been published on July 15, 2021, wrongly claims without any discernible basis: "Attorney Gregory Slate is currently stalking more than a dozen people. He has not abandoned crime, he has embraced it. He is one of the most dangerous actors on the dark web."

80.     The Judge Gnash Site falsely claims:

> "October 14, 2011, one month after Alecia Wheeler was murdered, the chief of the Attorney General's domestic violence unit, Janese Bechtol, and assistant attorney general Sarah Connell appeared in court with attorney Slate. Bechtol allowed Slate to testify falsely that he never worked for my business, that he was employed as a landlord, and that he "only knew my wife in passing."

Bechtol knew that the testimony was false. She did not inform the court about the false statements or correct the record as required. Bechtol ignored an admonishment from the judge that allowing Slate to testify falsely was "misconduct.'

'It's unethical   for them to elicit testimony that they believe to be perjury."

Judge Stuart Nash [sic], October 14, 2011'"

81.    Defendants        have        posted        similar        websites        at lifesentenceontheinternet.com in October, November, and as recently as December 16, 2021.

F. *MAY AND JULY 2021 DEFAMATORY AND INFRINGING PUBLICATIONS AFTER THIS LAWSUIT'S FILING*

82.    In and around early May 2021, Defendants Ferrell and Kamau, continuing to act in concert and with a common cause, published new web pages focused on Plaintiff.

83.    With Defendant Ferrell's only owned corporation Telith now defunct, Defendant Ferrell published a new website at lifesentenceontheinternet.com containing Plaintiff's personal and private photographs in the Self-Portrait Copyright.

84.    The same personal and private photographs in the Self-Portrait Copyright are published at the Kamau Site.

85.    Ferrell's Website published anew the false claims about Plaintiff

detailed in paragraphs 64(a)-(c), above, in its new May 2021 publication.

86.    Kamau's Site repeats verbatim those false claims about Plaintiff in paragraphs 64(a)-(c), above.

87.    On or about July 15, 2021, Defendants Kamau and Ferrell created and posted new webpages at http://www.stuartgnash.com/, https://www.gregslate.org/, https://www.janesebechtol.com/   ,   http://1serialstalker.blogspot.com/   and http://janesebechtol.blogspot.com/ (hereinafter, the "July 15, 2021 Webpages") that displays Plaintiff's private photos from the Self-Portrait Copyright and makes new defamatory allegations about Plaintiff.

88.    Defendants Ferrell created and posted a new webpage on Ferrell's Website.

89.    The new website at https://www.gregslate.org/ and Ferrell's Website "doxes" Plaintiff and his family by repeatedly identifying their home addresses with photos of their houses alongside the outrageously false claims about Plaintiff.

90.    The new page posted at Ferrell's Website in May 2021 also falsely claims that:

    a.    "Attorney Slate hacked into the email accounts of opposing ABC witnesses to plant evidence and frame witnesses ahead of their scheduled testimony."

    b.    "Attorney Slate has been diagnosed by a psychiatrist with uncontrollable rage and anger management issues."

    c.    "He [Plaintiff] is one of the most dangerous actors on the

21

dark web."

d.    "Attorney Slate can hack into any hosting provider or
Internet service provider including most of the major companies
like Comcast/Xfinity, Century Link, and others."

G. *Notice to Google of the Infringing Material it Hosts on Its Servers,*
*Blogspot, and YouTube*

91.    On May 12, 2021, Plaintiff provided notice to Defendant Google of the

ongoing copyright violations by Google's continued hosting of Ferrell's Website

and making accessible through its hosting service his copyrighted, personal images.

Additionally, the plaintiff followed the procedure required by Google to notice its

copyright violations via Google's online form.

92.    Google ignored Plaintiff's May 12, 2021 notice.

93.    On May 17, 2021, Plaintiff's counsel sent a notice to Defendant Google

included the following information: (1) A physical or electronic signature of a person

authorized to act on behalf of the owner of an exclusive right that is allegedly

infringed; (2) Identification of the copyrighted work claimed to have been infringed,

or, if multiple copyrighted works at a single online site are covered by a single

notification, a representative list of such works at that site; (3) Identification of the

material that is claimed to be infringing or to be the subject of infringing activity and

that is to be removed or access to which is to be disabled, and information reasonably

sufficient to permit the service provider to locate the material; (4) Information

reasonably sufficient to permit the service provider to contact the complaining party,

such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted; (5) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and, (6) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

94.     The May 17, 2021 notice also included a copy of the filed complaint in this matter as an attachment.

95.     On June 2, 2021, Plaintiff's counsel sent Google another letter explicitly    notifying    Google    that    the    website    it    hosts    at www.lifesentenceontheinternet.com is "part of an ongoing harassment campaign against my client, publishing improperly obtained medical records, doxing, and other conduct, all inapposite to the "fair use" doctrine."

96.     Plaintiff's counsel's June 2, 2021, letter to Google advised that if the infringing material were not removed by June 9, 2021, Plaintiff would join Google as a defendant in this matter for its ongoing copyright infringement.

97.     On June 4, 2021, Plaintiff's counsel provided Google with screenshots of the infringing material at https://www.lifesentenceontheinternet.com, in response to a request for the same from Google and reiterate the request that Google respond

23

by June 9, 2021.

98.     As of the filings of this Amended Complaint, Google has not responded to Plaintiff's counsel and continues to host the website https://www.lifesentenceontheinternet.com that infringes Plaintiff's copyright by displaying his private photographs thereon and at other web pages hosted by Google.

99.     Defendant Kamau and Ferrell have used Defendant Google's servers to publish the Forged Judgment, private medical records, private, copyrighted photographs, and outrageous lies that have ruined Plaintiff's life by rending him unemployable and targeting all of his associates such that Plaintiff cannot have a meaning professional or personal relationship Defendants' conduct does not attack and attempt to destroy.

## COUNT ONE
## DEFAMATION AND DEFAMATION *PER SE* FOR FALSELY ASSERTING PLAINTIFF IS A FELON AND PUBLICATION OF THE MAYOR BOWSER LETTER ON POLICEABUSE.COM (AGAINST DEFENDANT DIOP KAMAU)

100.    Section III-C (¶¶ 36-40) is realleged and incorporated by reference as if fully set forth herein.

101.    Defendant Kamau intentionally made false and defamatory statements regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

102.    Defendant Kamau disseminated his false statements in writing to third parties, including, without limitation, thousands of individuals over the internet.

103.   Specifically, Defendant Kamau declared to the Mayor and thousands more on his website that the Plaintiff was on probation and incarcerated "for a felony hit and run conviction in Virginia."

104.   The false and defamatory statements published by Defendants Kamau and asserting Plaintiff has a "conviction," was on "probation," and was "incarcerated" for a felony have made Plaintiff appear odious, infamous, and ridiculous.

105.   Defendant Kamau intentionally made the statements with the intent to harm Plaintiff.

106.   Defendant Kamau's statements regarding a felony conviction is defamation per se and actionable as a matter of law irrespective of special harm.

107.   Defendant Kamau's statements were intended to injure the Plaintiff in his profession and standing within the community.

108.   Damages are presumed as a result of the statements being defamation per se.

109.   Notwithstanding, but in the alternative, Defendants Kamau's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

110.   Plaintiff has and will suffer severe harm in his ability to procure employment opportunities.

111.   Plaintiff is entitled to recover compensatory damages, which are presumed, and damages as a result of the damage to his reputation.

112.   In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Kamau.

113.   Defendant Kamau, jointly and severally, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

## COUNT TWO
## COPYRIGHT INFRINGEMENT OF SELF-PORTRAIT COPYRIGHT ON FLYERS AND POLICEABUSE.COM (AGAINST DEFENDANT KAMAU)

114.   Section III-B (¶¶ 25-35), the exhibits attached to the original complaint, and paragraphs 47, 49 and 56 are realleged and incorporated by reference as if fully set forth herein.

115.   Plaintiff is, and at all relevant times has been, the sole owner of the copyrights in certain photographs. Each of these photographs has been properly registered with the United States U.S. Copyright Office, under the title "Self Photos 1999-2016".

116.   Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the exclusive rights to reproduce and to distribute the photos contained in the Self-Portrait Copyright.

117.   Without Plaintiff's permission, Defendant Kamau reproduced and distributed the photos in the Self-Portrait Copyright to the public through numerous websites, including, but not limited to, the Policeabuse.com, Live.com, WordPress, and Vimeo. In doing so, Defendant Kamau infringed Plaintiff's exclusive rights of reproduction and distribution.

118.   Some of this infringement took place after the photos in the Self-Portrait Copyright were registered with the Copyright Office.

119.   Defendant Kamau committed his infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

120.   As a result of Defendant Kamau's infringement of Plaintiff's copyrights, the Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(c).  Plaintiff is also entitled to costs and attorney fees under 17 U.S.C. § 505.

121.   Defendant Kamau's conduct has caused Plaintiff great and irreparable injury that can neither be fully compensated nor measured in money. Defendant Kamau's conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendant Kamau from further infringing the Self-Portrait Copyright and ordering Defendants to destroy all copies of the Copyrighted Works under 17 U.S.C. §§ 502 and 503.

**COUNT THREE**
**DEFAMATION AND DEFAMATION PER SE FOR FALSE CLAIMS**
**IN JULY 2021 PUBLICATION AT**
**JANESEBECHTOL.BLOGSPOT.COM**
**(AGAINST DEFENDANT KAMAU)**

122.    Footnote 1, Section III-F, paragraphs 87, are realleged and incorporated

by reference as if fully set forth herein.

123.    Defendant Kamau intentionally made false and defamatory statements

regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

124.    Defendant Kamau disseminated his false statements in writing to third

parties, including, without limitation, thousands of individuals over the internet.

125.    Specifically,  on  JANESEBECHTOL.BLOGSPOT.COM  Defendant

Kamau falsely declared:

a.      'Former Attorney Slate operates an insurance fraud ring out of
Baltimore.'
b.      'Greg Slate was on probation for a felony hit and run with three DUI
arrests (2 convictions)'
c.      'Attorney Slate posing with a fake Emmy award.'
d.      'Attorney Slate has never written, published, or produced anything in
his entire life. He has used the phony award for years to gain the confidence
of his clients and unwitting fraud targets. Courthouse News describes how
Slate used the fake Emmy award in his litigation with ABC News.'
e.      'Attorney Gregory Slate is currently stalking more than a dozen people.
He has not abandoned crime, he has embraced it. He is one of the most
dangerous actors on the dark web.'
f.      'October 14, 2011, one month after Alecia Wheeler was murdered, the
chief of the Attorney General's domestic violence unit, Janese Bechtol, and
assistant attorney general Sarah Connell appeared in court with attorney Slate.
Bechtol allowed Slate to testify falsely that he never worked for my business,
that he was employed as a landlord, and that he 'only knew my wife in
passing.' Bechtol knew that the testimony was false. She did not inform the

court about the false statements or correct the record as required. Bechtol ignored an admonishment from the judge that allowing Slate to testify falsely was 'misconduct.''

g.    Plaintiff engaged in "identity theft, and arson."

126.    The false and defamatory statements published by Defendant Kamau and asserting Plaintiff has multiple DUI arrests and "convictions," engaged in "arson," and was "identity theft" made Plaintiff appear odious, infamous, and ridiculous.

127.    Defendant Kamau intentionally made the statements with the intent to harm Plaintiff.

128.    Defendants Ferrell's statements regarding felony convictions and crimes are defamation per se and actionable as a matter of law irrespective of special harm.

129.    Defendants Ferrell's statements were intended to injure the Plaintiff in his profession and standing within the community.

130.    Damages are presumed as a result of the statements being defamation per se.

131.    Notwithstanding, but in the alternative, Defendants Ferrell's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

132.    Plaintiff has and will suffer severe harm in his ability to procure employment opportunities.

133.   Plaintiff is entitled to recover compensatory damages, which are presumed, and damages as a result of the damage to his reputation.

134.   In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Ferrell.

135.   Defendant Kamau, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

## COUNT FOUR
## INTENTION INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST  DEFENDANT KAMAU)

136.   Sections III-A, B, C, D, E, and F are realleged and incorporated by reference as if fully set forth herein.

137.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were so extreme and outrageous as to exceed the bounds of decency and to be atrocious and intolerable in a civilized society.

138.   Defendant Kamau's acts and omissions include, inter alia:

a.     Engaging in a continuous harassment campaign of Plaintiff over the court of more than a decade.

b.     Continuing to harass Plaintiff after being ordered by the District of Columbia Superior Court to cease communication with Plaintiff such that a criminal warrant was issued for Defendant Kamau.

c.     Impersonating Plaintiff to the Baltimore City Housing Authority.

d.      Creating, and distributing a counterfeit court judgment against Plaintiff falsely stating Plaintiff owed a debt he did not.

e.      Publishing publicly on the internet Plaintiff's social security number, pictures of his private residence, and directions to Plaintiff's home alongside false defamatory statements.

f.      Publishing on policeabuse.com altered portions of Plaintiff's private medical record alongside the false allegation: "Attorney Slate has been diagnosed by a psychiatrist with uncontrollable rage and anger management issues"

g.      Accuses Plaintiff of being responsible for the murder of a woman Plaintiff has never met and despite the fact that an individual, as unknown to Plaintiff, has been convicted for the murder.

h.      Injecting himself into and filing documents defaming Plaintiff in Plaintiff's real estate litigation by falsely claiming to be an "interested party"

139.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were intended by Defendant Kamau to cause disturbance in the emotional tranquility of Plaintiff, so acute that harmful physical consequences might and did result, including Plaintiff's suffering panic attacks and similar episodes involving uncontrolled shaking, nausea and vomiting, intermittent physical ticks, and insomnia.

140.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were intended by Defendant Kamau to cause harmful physical consequences to Plaintiff.

141.   The acts and omissions of Defendant Kamau, as alleged in this

Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause disturbance in the emotional tranquility of Plaintiff so acute that harmful physical consequences might result.

142.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause harmful physical consequences to Plaintiff.

143.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were malicious, intentional, motivated by hatred, common-law malice, ill-will, and a desire to injure Plaintiff

144.   In the alternative Plaintiff alleges that the acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, were reckless.

145.   The acts and omissions of Defendant Kamau, as alleged in this Amended Complaint, have directly and proximately caused extreme emotional distress to Plaintiff.

## COUNT FIVE
## INVASION OF PRIVACY FALSE LIGHT AND PUBLIC DISCLOSURE OF PRIVATE FACTS ON POLICEABUSE.COM AND IN MASS MAILINGS
### *(AGAINST  DEFENDANT KAMAU)*

146.   Paragraphs 2, 13-24, 89, 99, 138(e-f), Section III-B (¶¶ 25-35), the exhibits attached to the original complaint are realleged and incorporated by reference as if fully set forth herein.

147.   The publication of information and various statements about Plaintiff, by defendant Kamau,   as alleged in this Amended Complaint, constituted a publication of private facts concerning Plaintiff and placed Plaintiff in a false and objectionable light and other than he actually is.

148.   At no time has Plaintiff, waived or otherwise taken any action that would constitute an implied waiver of his privilege against the publication of private facts concerning Plaintiff.

149.   The facts published as alleged in this Amended Complaint were not and are not of legitimate concern to the public.

150.   The publication of this private information as alleged in this Amended Complaint was such that it was and is highly offensive to a reasonable person of ordinary sensibilities, considering the time and place of such publication.

151.   The various statements published by Defendant Kamau, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light and other than he actually is.

152.   The various statements published by Defendant Kamau, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light highly offensive to a reasonable person.

153.   The various statements published by defendant Kamau, as alleged in this Amended Complaint, characterized Plaintiff falsely by attributing to him

conduct which is not his own.

154.   The various statements published by  defendant Kamau, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light highly offensive to a reasonable person, characterized Plaintiff falsely by attributing to him conduct which is not his own placing him in a false light, and defendant Kamau knew or should have known their published statements placed Plaintiff in a false light.

155.  Defendant Kamau, owed a duty of care not to publish information private facts about Plaintiff, as alleged in this Amended Complaint, or information that placed him in a false light.

156.   Defendant Kamau, breached that duty by publishing information that they knew or should have known placed Plaintiff in a false light and knew that the information they published about Plaintiff was false, or acted with reckless disregard to whether it was false.

157.   Defendant Kamau, as alleged in this Amended Complaint, published private facts and information about Plaintiff that defendant Kamau knew placed him in a false light on the World Wide Web in such a way as to result in such statements being "cached," or preserved or retained on the Web.  Defendant Kamau was reckless with regard to whether such publication were private facts or placed Plaintiff in a false light.

158.   In this way, the statements and information about Plaintiff that defendant Kamau, published on the World Wide Web remain accessible to any person with access to an Internet search engine.

159.   So long as these statements remain cached on the World Wide Web as alleged in this Amended Complaint, the statements about Plaintiff has suffered, is suffering, and will suffer irreparable harm to his trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule, and irreparable harm that cannot be recompensed at law.

160.   Defendant Kamau, as alleged in this Amended Complaint, published private facts the about Plaintiff and information that placed him in a false light via mail in such a way as to result in such statements being retained and preserved by the friends, associates, family, and neighbors of the statements about Plaintiff who defendant Defendant sent his mass mailings.

161.   As a direct and proximate result of the acts and omissions of the defendant Kamau,  as alleged in this Amended Complaint, the Plaintiff has suffered, is suffering, and will continue to suffer actual damages in the form of financial loss, injury to reputation, mental anguish, and loss of current and future business, and is entitled to presumed damages.

**COUNT SIX**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND**
**PROSPECTIVE ECONOMIC ADVANTAGE VIA MASS MAILING AND**
**PUBLICATIONS AT POLICEABUSE.COM**

## *(AGAINST DEFENDANT KAMAU)*

162.   Section III-B (¶¶ 25-35), paragraphs 47, and 49, the exhibits attached to the original complaint are realleged and incorporated by reference as if fully set forth herein.

163.   Defendant Kamau's conduct as alleged herein gives rise to common law liability for intentional interference with contractual, business, economic relations, and intentional interference with prospective economic advantage.

164.   At all relevant times, Plaintiff held legally enforceable contractual, business, or economic relationships with third parties.

165.   At all relevant times, Plaintiff possessed a reasonable probability of entering into legally enforceable contractual, business, or economic relationships with third parties but for defendant Kamau's tortious conduct.

166.   At all relevant times, the defendant Kamau knew of Plaintiff's valid and legally enforceable contractual, business, and economic relationships with third parties and that unlawful interference was certain or substantially certain to occur as a result of its tortious conduct.

167.   At all relevant times, the defendant knew of Plaintiff's prospective contractual, business, and economic relationships with third parties and that unlawful interference was certain or substantially certain to occur as a result of defendant Kamau tortious conduct.

168.   Defendant Kamau deliberate and primary purpose in engaging in the foregoing intentional acts and practices was to cause a breach or disruption of Plaintiff's contractual, business, and economic relations with third parties thwart Plaintiff's prospective contractual, business, and economic relations with third parties.

169.   The foregoing relationships provided economic and other benefits to Plaintiff but for the defendant Kamau's tortious conduct and unlawful acts.

170.   The foregoing acts and practices, and the continuing course of defendant Kamau's tortious conduct, deliberately and directly resulted in actual breaches and disruptions of plaintiff's contractual, business, and economic relations with third parties, which directly and proximately caused the plaintiff to suffer injury and damages to its business and property, as set forth above.

171.   The foregoing acts and practices and the defendant Kamau's continuing course of tortious conduct violate statutes, regulations, common law, and other determinable legal standards and were and are wrongful independent of their impact on Plaintiff's prospects for economic advantage.

172.   Defendant Kamau committed these tortious acts with deliberate and actual malice, ill will, and specific knowledge that its actions constituted an outrageous, willful, and wanton disregard of the plaintiff's legal rights and expectations.

37

173.   Unless the activities complained of are enjoined, Plaintiff will suffer immediate and irreparable injury for which plaintiff is without an adequate remedy at law.

## COUNT SEVEN
## DEFAMATION AND DEFAMATION PER SE FOR 2020 PUBLICATION FALSELY ASSERTING PLAINTIFF IS A FELON AT LIFESENTENCEONTHEINTERNET.COM
### *(AGAINST DEFENDANT TELITHA ENTERTAINMENT, INC.)*

174.   Paragraphs 29, 42-46, 48, 50, and 53 are realleged and incorporated by reference as if fully set forth herein.

175.   Defendant Teltiha intentionally made false and defamatory statements regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

176.   Defendant Telitha disseminated her false statements in writing to third parties, including, without limitation, thousands of individuals over the internet.

177.   Specifically, Defendant Teltiha declared to thousands on it's website (lifesentenceontheinternet.com) that Plaintiff was on probation and incarcerated "for a felony hit and run conviction in Virginia."

178.   Further, Telitha's lifesentenceontheinternet.com asserts to anyone who searches Plaintiff's name on the internet that "one year after being convicted of perjury, fraud, and witness intimidation by a federal court, Gregory Slate was granted a license to practice law in the state of Maryland."

179.   If it were true, the statements implied that such convictions reflect on

Plaintiff's character and truthfulness, but they are factually inaccurate statements.

180. The false and defamatory statements published by Defendant Telitha asserting Plaintiff has a "conviction," was on "probation," and was "incarcerated" for a felony have made Plaintiff appear odious, infamous, and ridiculous.

181. The false and defamatory statements published by Defendant Telitha asserting Plaintiff has been "convicted" and "found guilty" of "perjury," "fraud," and "witness intimidation" make Plaintiff appear odious, infamous, and ridiculous.

182. Defendants Kamau and Ferrell intentionally made the statements with the intent to harm Plaintiff.

183. Defendants Kamau and Ferrell's statements regarding a felony conviction is defamation per se and actionable as a matter of law irrespective of special harm.

184. Defendant Telitha's statements were intended to injure the Plaintiff in his profession and standing within the community.

185. Damages are presumed as a result of the statements being defamation per se.

186. Notwithstanding, but in the alternative, Defendant Telitha's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

187. Plaintiff has and will suffer severe harm in his ability to procure

employment opportunities.

188.   Plaintiff is entitled to recover compensatory damages, which are presumed, and damages as a result of the damage to his reputation.

189.   In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Kamau and Ferrell.

190.   Defendant Telitha, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

191.   In this way, the false and defamatory statements about the plaintiff that Defendant Telitha published on the World Wide Web remain accessible to anyone who has access to an Internet search engine.

192.   So long as these false and defamatory statements remain cached on the World Wide Web as alleged in this Complaint, Plaintiff has suffered, is suffering, and will suffer irreparable harm to his trade, profession, community standing, reputation and good name, obloquy, hatred, ridicule, and other irreparable harm that cannot be recompensed at law.

193.   Plaintiff demands judgment against Defendant Telitha, including a mandatory injunction directing Defendant Telitha to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces

of and links to the false and defamatory statements posted on the Web by Defendants; an award of compensatory and presumed damages in an amount to be determined at trial, but not less than Seventy-Five Thousand Dollars ($75,000.00); punitive damages in an amount to be determined at trial, but believed to exceed Two Million Dollars ($2,000,000.00); his costs in this behalf expended; and such further relief as justice demands.

## COUNT EIGHT
## COPYRIGHT INFRINGEMENT OF SELF-PORTRAIT COPYRIGHT 2020 PUBLICATION AT LIFESENTENCEONTHEINTERNET.COM
### *(AGAINST DEFENDANT TELITHA ENTERTAINMENT CORP.)*

194.   Paragraphs 29, 55, and 57 are realleged and incorporated by reference as if fully set forth herein.

195.   Plaintiff is, and at all relevant times has been, the sole owner of the copyrights in certain photographs. Each of these photographs has been properly registered with the United States U.S. Copyright Office, under the title "Self Photos 1999-2016".

196.   Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the exclusive rights to reproduce and to distribute the photos contained in the Self-Portrait Copyright.

197.   Without Plaintiff's permission, Defendant Telitha Entertainment Corp. reproduced and distributed the photos in the Self-Portrait Copyright to the public through numerous websites, including, but not limited to, the Policeabuse.com,

Live.com, WordPress, and Vimeo. In doing so, Defendant Telitha Entertainment Corp. infringed Plaintiff's exclusive rights of reproduction and distribution.

198.   Some of this infringement took place after the photos in the Self-Portrait Copyright were registered with the Copyright Office.

199.   Defendant Telitha Entertainment Corp. committed its infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

200.   As a result of Defendant Telitha Entertainment Corp.'s infringement of Plaintiff's copyrights, the Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(c).  Plaintiff is also entitled to costs and attorney fees under 17 U.S.C. § 505.

201.   Defendant Telitha Entertainment Corp.'s conduct has caused Plaintiff great and irreparable injury that can neither be fully compensated nor measured in money. Defendant Telitha Entertainment Corp.'s conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendant from further infringing the Self-Portrait Copyright and ordering Defendant Telitha Entertainment Corp. to destroy all copies of the Copyrighted Works under 17 U.S.C. §§ 502 and 503.

## COUNT NINE
## COPYRIGHT INFRINGEMENT OF SELF-PORTRAIT COPYRIGHT IN MAY 2021 PUBLICATION AT LIFESENTENCEONTHEINTERNET.COM
### *(AGAINST DEFENDANT FERRELL)*

202.   Section I, paragraphs 25, 26, and 83 are realleged and incorporated by reference as if fully set forth herein.

203.   Plaintiff is, and at all relevant times has been, the sole owner of the copyrights in certain photographs. Each of these photographs has been properly registered with the United States U.S. Copyright Office, under the title "Self Photos 1999-2016".

204.   Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the exclusive rights to reproduce and to distribute the photos contained in the Self-Portrait Copyright.

205.   Without Plaintiff's permission, Defendant Ferrell reproduced and distributed the photos in the Self-Portrait Copyright to the public through numerous websites, including, but not limited to, the Policeabuse.com, Live.com, WordPress, and Vimeo. In doing so, Defendant Ferrell infringed Plaintiff's exclusive rights of reproduction and distribution.

206.   Some of this infringement took place after the photos in the Self-Portrait Copyright were registered with the Copyright Office.

207.   Defendant Ferrell committed her infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

43

208.   As a result of Defendant Ferrell's infringement of Plaintiff's copyrights, the Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(c).  Plaintiff is also entitled to costs and attorney fees under 17 U.S.C. § 505.

209.   Defendant Ferrell's conduct has caused Plaintiff great and irreparable injury that can neither be fully compensated nor measured in money. Defendant Ferrell's conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendant from further infringing the Self-Portrait Copyright and ordering Defendant Ferrell to destroy all copies of the Copyrighted Works under 17 U.S.C. §§ 502 and 503.

## COUNT TEN
## DEFAMATION AND DEFAMATION PER SE FOR FALSELY ASSERTING PLAINTIFF IS A FELON IN MAY 2021 PUBLICATION AT LIFESENTENCEONTHEINTERNET.COM
### *(AGAINST DEFENDANT FERRELL)*

210.   Section III-F (¶¶ 82-90) is realleged and incorporated by reference as if fully set forth herein.

211.   Defendants Ferrell intentionally made false and defamatory statements regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

212.   Defendants Ferrell disseminated his false statements in writing to third parties, including, without limitation, thousands of individuals over the internet.

213.   Specifically, Defendant Ferrell declared to the Mayor and thousands

more on his website that the Plaintiff was on probation and incarcerated "for a felony hit and run conviction in Virginia."

214.   The false and defamatory statements published by Defendants Ferrell and asserting Plaintiff has a "conviction," was on "probation," and was "incarcerated" for a felony have made Plaintiff appear odious, infamous, and ridiculous.

215.   Defendant Ferrell intentionally made the statements with the intent to harm Plaintiff.

216.   Defendants Ferrell's statements regarding a felony conviction is defamation per se and actionable as a matter of law irrespective of special harm.

217.   Defendants Ferrell's statements were intended to injure the Plaintiff in his profession and standing within the community.

218.   Damages are presumed as a result of the statements being defamation per se.

219.   Notwithstanding, but in the alternative, Defendants Ferrell's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

220.   Plaintiff has and will suffer severe harm in his ability to procure employment opportunities.

221.   Plaintiff is entitled to recover compensatory damages, which are

presumed, and damages as a result of the damage to his reputation.

222.   In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Ferrell.

223.   Defendant Ferrell, jointly and severally, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

## COUNT ELEVEN
## INTENTION INFLICTION OF EMOTIONAL DISTRESS
### *(AGAINST DEFENDANT FERRELL)*

224.   Sections III-A through F, and Footnote 1 are realleged and incorporated by reference as if fully set forth herein.

225.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were so extreme and outrageous as to exceed the bounds of decency and to be atrocious and intolerable in a civilized society.

226.   Defendant Ferrell's acts and omissions include, inter alia:
    a.    Engaging in a continuous harassment campaign of Plaintiff over the court of more than decade.

    b.    Publishing false defamatory websites at:
      i.    Copyrightthisbitch.com
      ii.    Itsfatassbyanose.com
      iii.    Stankymotherfucker.info
      iv.    Fuckingcoward.tv
      v.    Gregslate.tv
      vi.    Youfuckingcoward.com
      vii.    Crashdummy.tv

viii.    Stankymotherfucker.com
ix.    Cyberstalker.info
x.    Cyberstalker.tv
xi.    Punkassbitch.tv
xii.    Stinkymotherfucker.com

c.    Continuing to harass and publish defamatory websites about Plaintiff after being ordered by the District of Columbia Superior Court to cease communication with Plaintiff and remove her websites about Plaintiff such that Ferrell was held in contempt of court.

d.    Encouraging her husband to and laughing while he impersonated Plaintiff to the Baltimore City Housing Authority.

e.    Publishing publicly on the internet Plaintiff's social security number, pictures of his private residence, and directions to Plaintiff's home alongside false defamatory statements.

f.    Publishing on lifesetenceontheinternet.com altered portions of Plaintiff's private medical record alongside the false allegation: "Attorney Slate has been diagnosed by a psychiatrist with uncontrollable rage and anger management issues"

g.    Calling hundreds of Plaintiff's friends, relatives, neighbors, classmates, tenants, and business associates falsely implicating plaintiff in criminal acts.

227.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were intended by Defendant Ferrell to cause disturbance in the emotional tranquility of Plaintiff, so acute that harmful physical consequences might and did result, including Plaintiff's suffering panic attacks and similar episodes involving uncontrolled shaking, nausea and vomiting, intermittent physical ticks, and insomnia.

228.   The acts and omissions of Defendant Ferrell, as alleged in this

Amended Complaint, were intended by Defendant Ferrell to cause harmful physical consequences to Plaintiff.

229.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause disturbance in the emotional tranquility of Plaintiff so acute that harmful physical consequences might result.

230.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were such that a reasonable person would find that they were reasonably likely to cause harmful physical consequences to Plaintiff.

231.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were malicious, intentional, motivated by hatred, common-law malice, ill-will, and a desire to injure Plaintiff

232.   In the alternative Plaintiff alleges that the acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, were reckless.

233.   The acts and omissions of Defendant Ferrell, as alleged in this Amended Complaint, have directly and proximately caused extreme emotional distress to Plaintiff.

**COUNT TWELVE**
**INVASION OF PRIVACY FALSE LIGHT AND PUBLIC**
**DISCLOSURE OF PRIVATE FACTS ON**
**LIFESENTENCEONTHEINTERNET.COM**
*(AGAINST DEFENDANT FERRELL)*

234.   Paragraphs 2, 13-35, 89, 99, 226(e-f), Section III-B (¶¶ 25-35), the exhibits attached to the original complaint are realleged and incorporated by reference as if fully set forth herein.

235.   The publication of information and various statements about Plaintiff, by defendant Ferrell, as alleged in this Amended Complaint, constituted a publication of private facts concerning Plaintiff and placed Plaintiff in a false and objectionable light and other than he actually is.

236.   At no time has Plaintiff, waived or otherwise taken any action that would constitute an implied waiver of his privilege against the publication of private facts concerning Plaintiff.

237.   The facts published as alleged in this Amended Complaint were not and are not of legitimate concern to the public.

238.   The publication of this private information as alleged in this Amended Complaint was such that it was and is highly offensive to a reasonable person of ordinary sensibilities, considering the time and place of such publication.

239.   The various statements published by Defendant Ferrell, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light and other

than he actually is.

240.   The various statements published by Defendant Ferrell, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light highly offensive to a reasonable person.

241.   The various statements published by defendant Ferrell, as alleged in this Amended Complaint, characterized Plaintiff falsely by attributing to him conduct which is not his own.

242.   The various statements published by defendant Ferrell, as alleged in this Amended Complaint, placed Plaintiff in a false and objectionable light highly offensive to a reasonable person, characterized Plaintiff falsely by attributing to him conduct which is not his own placing him in a false light, and defendant Ferrell knew or should have known their published statements placed Plaintiff in a false light.

243.   Defendant Ferrell, owed a duty of care not to publish information private facts about Plaintiff, as alleged in this Amended Complaint, or information that placed him in a false light.

244.   Defendant Ferrell breached that duty by publishing information that they knew or should have known placed Plaintiff in a false light and knew that the information they published about Plaintiff was false, or acted with reckless disregard to whether it was false.

245.   Defendant Ferrell, as alleged in this Amended Complaint, published

private facts and information about Plaintiff that defendant Ferrell knew placed him

in a false light on the World Wide Web in such a way as to result in such statements

being "cached," or preserved or retained on the Web.  Defendant Ferrell was reckless

with regard to whether such publication were private facts or placed Plaintiff in a

false light.

246.   In this way, the statements and information about Plaintiff that

defendant Ferrell,  published on the World Wide Web remain accessible to any

person with access to an Internet search engine.

247.   So long as these statements remain cached on the World Wide Web as

alleged in this Amended Complaint, the statements about Plaintiff has suffered, is

suffering, and will suffer irreparable harm to his trade, profession, community

standing, reputation and good name, obloquy, hatred, ridicule, and irreparable harm

that cannot be recompensed at law.

248.   Defendant Ferrell, as alleged in this Amended Complaint, published

private facts the about Plaintiff and information that placed him in a false light via

the internet at lifesentenceontheinternet.com and youtube.com in such a way as to

result in such statements being retained and preserved by the friends, associates,

family, and neighbors.

249.   As a direct and proximate result of the acts and omissions of the

defendant Ferrell, as alleged in this Amended Complaint, the Plaintiff has suffered,

is suffering, and will continue to suffer actual damages in the form of financial loss, injury to reputation, mental anguish, and loss of current and future business, and is entitled to presumed damages.

**COUNT THIRTEEN**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**AND PROSPECTIVE ECONOMIC ADVANTAGE VIA**
**PUBLICATIONS AT LIFESENTENCEONTHEINTERNET.COM**
*(AGAINST DEFENDANT FERRELL)*

250.   Section III-F (¶¶ 82-90), paragraphs 46, and 48, the exhibits attached to the original complaint are realleged and incorporated by reference as if fully set forth herein.

251.   Defendant Ferrell's conduct as alleged herein gives rise to common law liability for intentional interference with contractual, business, economic relations, and intentional interference with prospective economic advantage.

252.   At all relevant times, Plaintiff held legally enforceable contractual, business, or economic relationships with third parties.

253.   At all relevant times, Plaintiff possessed a reasonable probability of entering into legally enforceable contractual, business, or economic relationships with third parties but for defendant Ferrell's tortious conduct.

254.   At all relevant times, the defendant Ferrell knew of Plaintiff's valid and legally enforceable contractual, business, and economic relationships with third parties and that unlawful interference was certain or substantially certain to occur as

a result of its tortious conduct.

255.   At all relevant times, the defendant knew of Plaintiff's prospective contractual, business, and economic relationships with third parties and that unlawful interference was certain or substantially certain to occur as a result of defendant Ferrell tortious conduct.

256.   Defendant Ferrell deliberate and primary purpose in engaging in the foregoing intentional acts and practices was to cause a breach or disruption of Plaintiff's contractual, business, and economic relations with third parties thwart Plaintiff's prospective contractual, business, and economic relations with third parties.

257.   The foregoing relationships provided economic and other benefits to Plaintiff but for the defendant Ferrell's tortious conduct and unlawful acts.

258.   The foregoing acts and practices, and the continuing course of defendant Ferrell's tortious conduct, deliberately and directly resulted in actual breaches and disruptions of plaintiffs contractual, business, and economic relations with third parties, which directly and proximately caused the plaintiff to suffer injury and damages to its business and property, as set forth above.

259.   The foregoing acts and practices and the defendant Ferrell's continuing course of tortious conduct violate statutes, regulations, common law, and other determinable legal standards and were and are wrongful independent of their impact

on Plaintiff's prospects for economic advantage.

260.   Defendant Ferrell committed these tortious acts with deliberate and actual malice, ill will, and specific knowledge that its actions constituted an outrageous, willful, and wanton disregard of the plaintiff's legal rights and expectations.

261.   Unless the activities complained of are enjoined, Plaintiff will suffer immediate and irreparable injury for which plaintiff is without an adequate remedy at law.

**COUNT FOURTEEN**
**DEFAMATION AND DEFAMATION PER SE FOR FALSE CLAIMS POSTED ON THE INTERNET AFTER THE FILING OF THE ORINGAL COMPLAINT**
*(AGAINST DEFENDANT FERRELL)*

262.   Section III-E through F are realleged and incorporated by reference as if fully set forth herein.

263.   Defendants Ferrell intentionally made false and defamatory statements regarding Plaintiff's conduct, and actions, with the intent to harm Plaintiff.

264.   Defendants Ferrell disseminated his false statements in writing to third parties, including, without limitation, thousands of individuals over the internet.

265.   Specifically, Defendant Ferrell falsely declared:

a.   'Former Attorney Slate operates an insurance fraud ring out of Baltimore.'

b.   'Greg Slate was on probation for a felony hit and run with three DUI arrests (2 convictions)'

54

c.  'Attorney Slate posing with a fake Emmy award.'

d.  'Attorney Slate has never written, published, or produced anything in his entire life. He has used the phony award for years to gain the confidence of his clients and unwitting fraud targets. Courthouse News describes how Slate used the fake Emmy award in his litigation with ABC News.'

e.  'Attorney Gregory Slate is currently stalking more than a dozen people. He has not abandoned crime, he has embraced it. He is one of the most dangerous actors on the dark web.'

f.  'October 14, 2011, one month after Alecia Wheeler was murdered, the chief of the Attorney General's domestic violence unit, Janese Bechtol, and assistant attorney general Sarah Connell appeared in court with attorney Slate. Bechtol allowed Slate to testify falsely that he never worked for my business, that he was employed as a landlord, and that he 'only knew my wife in passing.' Bechtol knew that the testimony was false. She did not inform the court about the false statements or correct the record as required. Bechtol ignored an admonishment from the judge that allowing Slate to testify falsely was 'misconduct.''

266.   The false and defamatory statements published by Defendants Ferrell and asserting Plaintiff has multiple DUI arrests and "convictions," engaged in "arson," and was "identity theft" made Plaintiff appear odious, infamous, and ridiculous.

267.   Defendant Ferrell intentionally made the statements with the intent to harm Plaintiff.

268.   Defendants Ferrell's statements regarding a felony convictions and crimes are defamation per se and actionable as a matter of law irrespective of special harm.

269. Defendants Ferrell's statements were intended to injure the Plaintiff in his profession and standing within the community.

270. Damages are presumed as a result of the statements being defamation per se.

271. Notwithstanding, but in the alternative, Defendants Ferrell's statements caused Plaintiff severe and special harm specifically with respect to his professional reputation within the community and his ability to rent property he owns.

272. Plaintiff has and will suffer severe harm in his ability to procure employment opportunities.

273. Plaintiff is entitled to recover compensatory damages, which are presumed, and damages as a result of the damage to his reputation.

274. In addition, Plaintiff is entitled to recover punitive damages due to the intentional, willful, and reckless actions of Defendants Ferrell.

275. Defendant Ferrell, as alleged in this Complaint, published false and defamatory statements about Plaintiff on the World Wide Web in such a way as to result in such false and defamatory statements being "cached," or preserved or retained on the Web.

## COUNT FIFTEEN
### CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
### (AGAINST DEFENDANT GOOGLE)

276. Section III-G, paragraphs 5, 10, 28-29, 25-26, 48-49, 55-57, 74-75, 83-

84, 87, 114-121, 194-209, footnote 1-2 are realleged and incorporated by reference as if fully set forth herein.

277.   Plaintiff is the owner of all right, title, and interest to each of the photographs and video deposited with the United States U.S. Copyright Office under the title "Self Photos 1999-2016" (the "Plaintiff's Copyrighted Works"). Plaintiff has registered his works with the United States Copyright Office. Plaintiff has been issued the United States copyright certificate listed on Exhibit B, attached hereto.

278.   Each of the photos and video in Plaintiff's Copyrighted Works consists of original material, and each is copyrightable subject matter.

279.   Using Google's servers, Blogspot hosting service Defendants Kamau and Ferrell have copied, reproduced, distributed, adapted, and/or publicly displayed Plaintiff's Copyrighted Works without the consent or authority of Plaintiff, thereby directly infringing Plaintiff's copyright.

280.   Google's conduct constitutes infringement of Plaintiff's copyright and exclusive rights under copyrights in Plaintiff's Copyrighted Works in violation of Sections 106 and 501, et. seq. of the United States Copyright Act, 17 U.S.C. §§ 106 and 501.

281.   Google has induced, caused, and/or materially contributed to unauthorized reproduction, adaptation, public display, and/or distribution of the Plaintiff's     Copyrighted     Works     by     hostings     Ferrell's     Website

lifesentenceontheinternet.com, storing images from the Plaintiff's Copyrighted Works on its Blogspot servers, and displaying Plaintiff's copyrighted videos and images on YouTube.

282. Google has and had knowledge that infringing images contained in Plaintiff's Copyrighted Works are available on its servers, could take simple measures to prevent further damage to Plaintiff's copyrighted works, and failed to take such steps.

283. Google's conduct constitutes contributory infringement of Plaintiff's copyright and exclusive rights under copyright in Plaintiff's Copyrighted Works.

284. Google has had the right and ability to supervise and/or control the infringing conduct of infringing websites described herein to which it links and hosts, and the infringing YouTube videos described herein. However, Google has failed and refused to exercise such supervision and/or control. As a direct and proximate result of such failure and refusal, Google and its users, affiliates, and Ferrell's Website lifesentenceontheinternet.com which Google hosts and links to, have infringed Plaintiff's copyrights in Plaintiff's Copyrighted Works, as set forth above. Google has derived a direct financial benefit from the increased traffic to Google and advertising dollars resulting from the general "draw" of Plaintiff's Copyrighted Works. Google is profiting from direct infringement while declining to exercise a right to stop or limit it.

285.   Google's conduct constitutes vicarious infringement of Plaintiff's copyrights and exclusive rights under copyright in Plaintiff's Copyrighted Works.

286.   The infringement of Plaintiff's rights in and to each of the photos and video in Plaintiff's Copyrighted Works constitutes a separate and distinct act of infringement.

287.   The acts of infringement by Google have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Plaintiff.

288.   As a direct and proximate result of the infringements by Google of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's Copyrighted Works, Plaintiff is entitled to its actual damages and Google's profits pursuant to 17 U.S.C. § 504(b).

289.   Alternatively, Plaintiff is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c). Google's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief prohibiting further infringements of Plaintiff's copyrights.

290.   Plaintiff further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff respectfully requests judgment as follows:

    A. Judgment in favor of Gregory Slate on Counts one through eleven

    B. A preliminary and permanent injunction prohibiting Defendants from posting or otherwise publishing material concerning Plaintiff on the Defamatory Websites or elsewhere;

    C. An order directing Defendant Kamau and Defendant Ferrell, jointly and severally, to take all steps necessary to remove from the World Wide Web and all search engines operating thereon all traces of and links to the false and defamatory statements posted on the Web by Defendants;

    D. A preliminary and permanent injunction prohibiting Defendants from posting or otherwise using any of Plaintiff's Copyrighted Works;

    E. Compensatory damages in an amount to be proven at trial, but at least in excess of $75,000.

    F. Statutory damages under 17 U.S.C. § 504(c);

    G. Punitive damages;

    H. Attorney fees;

    I. Costs of suit;

    J. Interest on the sum of the compensatory, statutory, and punitive damages; and,

    K. Any other relief the Court deems just and proper.

Dated:   August 31, 2022

Respectfully submitted,

/s/   *Janakan Thiagarajah*

Janakan Thiagarajah (DC Bar No.  996177)
Bellwether Law, PLLC
4315 50th Street NW
Suite 100 PMB 7017
Washington, DC 20016
Tel: (202) 596-8434
janakan@bellwetherlaw.com
*Attorney for Plaintiff Gregory A. Slate*

60