, UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**GREGORY SLATE**

*Plaintiff*

**v.**

**DIOP KAMAU, et al.**

*Defendant*

Case No.: 4:21-cv-00390-MW-MJF
Chief Judge Mark E. Walker

### PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR ENTRY FOR DEFAULT

COMES NOW, the Plaintiff, GREGORY SLATE, by and through undersigned counsel, hereby files this Reply to Defendant's Opposition to Plaintiff's Motion for Entry of Default Against Defendant Ferrell per this Court's Order for Reply (ECF 159), and in support thereof states:

### RELEVANT PROCEDURAL BACKGROUND

1.      After being personally served the summons and complaint in this matter (ECF 5), Defendant Ferrell was dismissed from this action for lack of personal jurisdiction in the District of Columbia ("DC"). Concurrent with his seeking leave to amend the complaint to secure jurisdiction over Defendant Ferrell in D.C, Plaintiff moved in the alternative for the D.C. Court to transfer to this Court, because as the

1

D.C. Court had acknowledged, "the N.D. Fla is the only venue where all parties agree that personal jurisdiction exists for all defendants." See ECF 29.  The matter was thus transferred, with the amended complaint to be filed in this transferee Court.

2.      On August 31, 2022, Plaintiff filed his first amended complaint, asserting his claims over Defendant Ferrell and bringing Defendant back into this litigation. *See* ECF 54.

3.      On September 6, 2022, the first summons of the amended complaint issued (ECF 55), and the undersigned counsel hired the Leon County Sheriff's Office ("LCSO") to serve Defendant Ferrell in person again, and also mailed Defendant a request for waiver of service, summons, and amended complaint, but the waiver was never returned.

4.      On September 7, 2022, the undersigned emailed Defendant Ferrell's counsel, Carlo D. Marichal, to confirm whether he would accept service on behalf of Defendant—yet he refused to accept service of the summons and Amended Complaint on behalf of Defendant Ferrell.  *See* ECF 153-3.

5.      However, ***the day after refusing to accept service*** on behalf of Defendant Ferrell--in an unabashedly paradoxical request, ***Defendant Ferrell's***

*counsel asked that Plaintiff make sure he served copies of his discovery requests to Defendant Ferrell in "word document form."*[1]  *See* ECF 153-4.

6.     The first summons and amended complaint could not be served by LCSO, who swore that despite their "due diligence" to locate and serve her, Defendant was "avoiding service" (ECF 60) and "actively avoiding service" (ECF 64).

7.     Two different certified private process servers would also indicated that they too proved unable to serve Defendant (ECF 67 and 68), despite her known location and numerous attempts. Plaintiff thus moved for, and was granted issuance of a second summons with an additional 90 days to serve Defendant.  *See* ECF 74.

8.     On January 2, 2023, amendments to section 48.161, Florida Statutes, became effective, providing, among other things: "The affidavit of compliance must set forth the facts that justify substituted service under this section and that show due diligence was exercised in attempting to locate and effectuate personal service on the party before using substituted service under this section. *The party effectuating service does not need to allege in its original or amended complaint the facts required to be set forth in the affidavit of compliance.*"

---

[1] Plaintiff has been unable to serve Defendant Ferrell any discovery requests because she is avoiding service of the summons and amended complaint and has yet to file an answer.

9.      On March 7, 2023, Plaintiff filed an affidavit from LCSO attesting to its significant "due diligence"--attempting no less than 8 times to serve Defendant the second summons and amended complaint, and searching for Defendant through Accurint and other law enforcement resources (ECF 99).

10.     After the LCSO indicated that second summons could not be served by LCSO, Plaintiff sought and received additional summons every 90 days for Defendant at her Tallahassee Residence (ECF 100 and 101) and her second home in Houston, TX (ECF 135 and 137).

11.     Despite the sworn "due diligence" of LCSO over the course of months, in addition to attempts by the Harris County, TX Constable's Office, and private process servers, including an "Affidavit of Due Diligence" (ECF 150) no one was able to serve Defendant Ferrell at her proclaimed residence in Tallahassee or her second home in Houston, TX.  *See* (ECF 121) (ECF 122) (ECF 152) (ECF 153).

4.      On July 11, 2023, Plaintiff sought (ECF 146) and the next day this Court issued (ECF 147) an alias summons to be served on Defendant, care of the Florida Secretary of State that remains valid until October 10, 2023.

5.      Undersigned counsel mailed—both via certified mail, return receipt requested, and FedEx—the letter from the Florida Department of State notifying the parties that service was accepted for Defendant Ferrell on July 12, 2023 (*see* ECF 153-8) ("Notice of Service"), a copy of the summons, and the amended complaint

to Defendant at her Tallahassee Residence, the second home she owns in Houston, TX, the address of record with the court for her wholly owned and operated Telitha Entertainment Corporation, and the address for every attorney who has represented her in this matter. *See* ECF 153 ¶¶ 19-23.

6.      Defendant's name appears to be signed on the return receipt confirming the delivery of the Notice of Service, summons, and amended complaint mailed to the residence Defendant owns in Houston, TX, delivered on July 22, 2023, at 2:09 pm.  *See* 153-19.

7.      July 27, 2023, at 4:23 pm the return receipt was signed for the Notice of Service, summons, and amended complaint sent to the address of record with this Court (ECF 107) for Defendant's wholly owned and operated Telitha Entertainment Corp. *See* ECF 153-21.

8.      The return receipt (ECF 153-16) and tracking information (ECF 153-15) indicating that Defendant rejected the package containing the Notice of Service, summons, and amended complaint sent to her professed Tallahassee Residence claiming the "addressee unknown" was filed with this court.

9.      Undersigned counsel also emailed the Notice of Service, summons, and complaint to each email address Defendant has used to communicate with Plaintiff's past counsel, courts, and to Defendant's current attorney.  *See* ECF 153-22.

10.    On August 4, 2023, undersigned counsel filed an Affidavit of Compliance, pursuant to and in accordance with Florida Statute § 48.161 as to Defendant Ferrell (ECF 153), that attests to the specific due diligence used to serve Defendant, as well as the evasive tactics and improper efforts Defendant undertook to conceal her whereabouts while evading service (ECF 153 ¶¶ 4-16, 18). The Affidavit  included as attachments, sworn copies of:

a.  The return receipt that appears to be signed by Defendant for the package containing the Notice of Service, summons, and amended complaint delivered to the residence she owns in Houston, Texas (ECF 153-19);

b.  The signed return receipt for the package containing the Notice of Service, summons, and amended complaint delivered to the address of record with the Court for Defendant's wholly-owned Telitha Entertainment Corp. (ECF 153-21);

c.  The return receipt (ECF 153-16) and tracking information (ECF 153-15) indicating that Defendant rejected the package containing the Notice of Service, summons, and amended complaint sent to her professed Tallahassee Residence "addressee unknown";

d.  Returned receipts for the package containing the Notice of Service, summons, and amended complaint sent to Defendant at the addresses for each of her attorneys in this case (ECF 153-17) (ECF 153-18) (ECF 153-19) (ECF 153-20);

e.  Proof of delivery via FedEx to all of the address discussed in paraphs a-d above (ECF 153-11).

16.    Defendant's answer or responsive motion was due August 2, 2023.

17.    On August 7, 2023, Plaintiff filed a motion for entry of default.

18.     On August 8, 2023, Defendant filed an opposition to Plaintiff's motion for entry of default, and a motion to quash service and dismiss the complaint against her.

19.     On August 9, 2023, this Court ordered Plaintiff to file a reply to Defendant's opposition to the default.

20.     On August 11, 2023, as Plaintiff was preparing to file his reply, Defendant and her counsel—notably, without having at any time seeking consent for leave to amend or file an answer—filed an "amended" response in opposition to Plaintiff's Motion for Default that requests leave to file an answer. ECF 160.

## MEMORANDUM OF LAW

### 1.  PLAINTIFF COMPLIED WITH THE 2023 AND PRE-2023 VERSIONS OF § 48.161

Defendant's lone argument cries forth that when Plaintiff served Defendant through the Department of State on July 12, 2023, Plaintiff failed to comply with supposed requirements of the statute. However, in arguing this point, Defendant cites to the old version of § 48.161—and the specific language that was explicitly removed by amendments that went into effect six months earlier on January 2, 2023.  To try and justify this citation to the old version, Defendant cites to *Baxter v. Miscavige*, No. 8:22-CV-986-TPB-JSS, 2023 WL 1993969, at *3 n.4 (M.D. Fla. Feb. 14, 2023) for the proposition that "the statute pertaining to service of process that was in effect when the cause of action accrued is what governs."  Defendant is not only incorrect

in the citation and reliance on the old statute, but it is quite clear Defendant knows she has no argument under the current Florida statute—otherwise we would not be arguing under this old statue.

Notably, in *Baxter* service via the Department of State occurred more than two months *before* the amendments to the statute took effect (on January 2, 2023).[2] As the court noted in *Baxter*, "Sections 48.181 and 48.161 of the Florida Statutes were amended during the pendency of this Motion with effective dates of the amendments of January 2, 2023." *Baxter*, 2023 WL 1993969, at *3. In this case Plaintiff served Defendant pursuant to 48.161 of the Florida Statutes more than 6 months *after* the statute was amended and took effect; and it was not until 7 months *after* the amendments to the statute were in effect, that any relevant motions were filed. Either way, the Court in *Baxter*, "found that [Defendant] has been served with process pursuant to section 48.161." *Baxter*, 2023 WL 1993969, at *10.

That courts have applied the current version of 48.161 of the Florida Statutes in cases filed in the preceding years substantially undercuts Defendant's argument that "the statute pertaining to service of process that was in effect when the cause of action accrued is what governs." For example, in *Lynch v. Bailey-Roka* the Court ordered: "Plaintiffs are not required to file the return receipt from Defendant but are

---

[2] "On October 10, 2022, Plaintiffs' counsel filed a declaration of compliance with Florida Statute section 48.161." *Baxter*, No. 8:22-CV-986-TPB-JSS, 2023 WL 1993969, at *2 (M.D. Fla. Feb. 14, 2023)

still required to send notice to the defendant via certified mail that substitute service has been effectuated through the Secretary of State." *Lynch v. Bailey-Roka*, No. 22-14338-CIV, 2023 WL 2866549, at *2 (S.D. Fla. Jan. 10, 2023); *see also Fla. Stat. § 48.161(2) ("The party effectuating service shall file proof of service or return receipts showing delivery to the other party by mail or courier and by electronic means, if electronic means were used, unless the party is actively refusing or rejecting the delivery of the notice." (emphasis added))."*

The law in effect at the time-of-service controls. *Hunt v. Dep't of Air Force, a Div. of U.S.*, 787 F. Supp. 197, 199 (M.D. Fla. 1992). Further, the Florida Legislature clearly intended for the amendments to section 48.161, Florida Statutes, to apply to service after January 2, 2023 (when the amendments took effect) — and that is shown simply by the fact that service through the Department of State according to the old version of section 48.161 is literally *impossible* after January 2, 2023. This impossibility can be demonstrated in a variety of ways. First, one need only compare the first sentence of the old statute requiring Plaintiffs send "a fee of $8.75 with the public officer or in his or her office or by mailing the copies by certified mail to the public officer with the fee," with the Department of States' announcement that, "Effective 1/2/2023, there is no fee for Substitute Service of Process. Any payment received will be returned." *See* Exhibit A. If Defendant's assertion is correct that the old version of the statute controls in any case, whether filed now or in the future,

based on when the cause of action accrued, then virtually no Plaintiff presently in court nor most Plaintiffs who will file complaints in the foreseeable future based on pre-2023 claims with have *any* recourse against an evasive defendant that conceals their whereabouts. This would be a boon for anyone simply willing to refuse to open their door for a process server.

Notwithstanding, even if this Court were to apply the old version of sections 48.161 of the Florida Statutes, the record reflects that Plaintiff strictly complied with both the old and current versions of the statute as applicable. Defendant alleges that Plaintiff failed to comply with the old statute by failing to:

1) engage in "due diligence" required by *Wiggam v. Bamford*, 562 So. 2d 389 (Fla. 4th DCA 1990);

2) file an affidavit of compliance;[4]

3) file the return receipt from the defendant;[5]

4) send notice to the defendant, via certified or registered mail, that substitute service has been effected through the Secretary of State;[6]

5) plead in the complaint that Defendant is otherwise concealing her whereabouts.[7]

---

[4] The Affidavit of Compliance is filed at ECF 153.

[5] Four signed return receipts addressed to the Defendant are filed with this Court. *See* ECF 153-17; *see also* ECF 153-18; *see also* ECF 153-19; *see also* ECF 153-21. One of the signed return receipts addressed to Defendant at the second home she owns in Houston, TX, appears to bear Defendant's signature, which would demonstrate personal service under Rule 4. *See* 153-19.

[6] A copy of the notice that substitute service was accepted by the Department of State is filed at ECF 153-8, and the undersigned counsel submitted a sworn affidavit that he mailed the Notice of Service, summons, and amended complaint via USPS certified mail, return receipt, and FedEx to every address available for Defendant. *See* ECF 153.

[7] The old version of § 48.161 is devoid of any reference to a requirement to plead any facts in the complaint nor even a reference to any requirements for the contents of complaints. The current version of § 48.161 explicitly provides, "The party effectuating service does not need to allege in its original or amended complaint the facts required to be set forth in the affidavit of compliance." Fla. Stat. Ann. § 48.161 (West).

As cursorily discussed and demonstrated by the cited record evidence in the footnotes to each of the above objections and more thoroughly below, each issue raised by Defendant is either plainly refuted by the record, the plain language of the relevant statute, or both.

### 1. PLAINTIFF'S DEMONSTRATED DUE DILIGENCE

Defendant cites *Wiggam v. Bamford,* 562 So. 2d 389, 392 (Fla. Dist. Ct. App. 1990) as the authority for determining "due diligence." *Wiggam*, however, was a case interpreting a version of the statute in effect between 1987 and 1995 —not the version Defendant asserts applies.[8]  According to Defendant, the standard for due diligence is:

> The test [for determining the sufficiency of constructive or substitute service] is not whether it was in fact possible to effect personal service in a given case, but whether the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant.

*Wiggam v. Bamford*, 562 So. 2d 389, 391 (Fla. Dist. Ct. App. 1990)

---

[8] The version of section 48.161 of the Florida Statutes effective as of January 2, 2023, states, "The party effectuating service is considered to have used due diligence if that party: (a) Made diligent inquiry and exerted an honest and conscientious effort appropriate to the circumstances to acquire the information necessary to effectuate personal service; (b) In seeking to effectuate personal service, reasonably employed the knowledge at the party's command, including knowledge obtained pursuant to paragraph (a); and (c) Made an appropriate number of attempts to serve the party, taking into account the particular circumstances, during such times when and where such party is reasonably likely to be found, as determined through resources reasonably available to the party seeking to secure service of process." Fla. Stat. Ann. § 48.161 (West)

Putting aside Defendant's choice of an anachronistic standard, whether we use that standard, the current statute's language, or anything in between—other than a hollow requisite attack, it's unclear what Defendant could possible mean.  There is no weak link in Plaintiff's efforts,  nor does Defendant cite one. Instead, the record reflects quite clearly that in addition to Plaintiff's fully diligent search and inquiry to locate and serve Defendant Ferrell through every relevant private and public record database available to him (ECF 153 ¶ 18), LCSO has also attempted to locate Defendant using databases available to law enforcement, swearing, "accurint says subject runs several businesses. one out of house. one in hollywood, ca and one in DC.[9]  no other current addresses listed in resources."  *See* ECF 99. Notwithstanding, Defendant has evaded service as detailed in the series of sworn unexecuted returns of service—specifically:

    a. On October 3, 2022, a process server from LCSO swore: "Multiple attempts with no response, avoiding service." *See* ECF 60.

    b. On October 25, 2022, LCSO swore "actively avoiding service, moving lawn ornaments to deny access to door to leave cards." *See* ECF 64.

    c. On November 21, 2022, J. Lee Vausee, Jr., a certified private process server, swore that he made 7 attempts to serve Defendant Ferrell at her last known address and he located Defendant Ferrell's son-in-law who "stated he did not know a Tyra Ferrell." *See* ECF 67.

    d. On November 22, 2022, Zhonta Stapelton, a certified process server, swore that he made 4 attempts to serve Defendant Ferrell including at 3425 Bannerman Rd., #164, Tallahassee, FL 32312—the address provided to this Court for Defendant Ferrell's wholly owned and operated company,

---

[9] Notably, to secure transfer from DC to this district, Defendant Ferrell swore to this Court, "I do not regularly engage, solicit, or do business in the District of Columbia." *See* ECF 9-1 ¶ 5. Plaintiff has always contended this assertion was grossly at odds with the record and reality.

Defendant Telitha (ECF 107). The address is apparently for a sushi restaurant or a UPS Store, neither of which are known to be or documented as affiliated with Defendant Ferrell (ECF 68).

e. On January 4, 2023, LCSO swore it attempted and was unable serve Defendant 8 times at her last known address. *See* ECF 99.

f. On March 30, 2023, LCSO swore it attempted but was unable to serve Defendant 5 times at her last known address but that during one attempt the process server: "went to the door and saw Diop Kamau (don jackson, the defendant) sitting at his desk. He waved and made eye contact. he immediately got up and walked to the back of the house. I knocked, saw him pass through the house again, and he never came to the door." *See* ECF 122

g. On July 27, 2023, LCSO swore it attempted but was unable serve Defendant 3 times at her last known address but that during one attempt the process server: "SAW FEMALE RUN BY WINDOW. WOULD NOT ANSWER DOOR." [emphasis in original] *See* ECF 152.

h. The last attempt by LCSO notes simply: "AVOIDANCE." [emphasis in original] *See* ECF 152.

Plaintiff submits that his efforts described in the affidavit of compliance and the numerous returns of serve more than demonstrate he "reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant." *Wiggam*, 562 So. 2d 389, 391 (Fla. Dist. Ct. App. 1990). Accordingly, Plaintiff has demonstrated due diligence such that Defendant has been properly served, Defendant failed to timely answer without good cause, and therefore default should be entered against her.

## 2.  THE AFFIDAVIT OF COMPLIANCE IS FILED AT ECF 153

Bizarrely, Defendant asserts, "there is nothing in the record indicating that Plaintiff […] filed an affidavit of compliance." But that is not true. Undersigned counsel filed a sworn "Affidavit of Compliance with Florida Statute § 48.161 as to Defendant Ferrell" (ECF 153) specifically averring to each specific act taken in compliance "with state statutory requirements for substituted service on Defendant Ferrell via electronic delivery of a copy of the process in this case to the Florida Secretary of State on July 12, 2023, at 6:39 PM."  ECF 153 ¶ 19.

Incredibly, when Defense counsel wrote Plaintiff claiming no affidavit had been filed, undersigned counsel replied attaching copies of the Affidavit of Compliance, and each affidavit of "due diligence" already filed in the case, and further urged Defense counsel to "not misrepresent the law or the facts as your email implies you intend to do." *See* Exhibit B. Defense counsel replied, "I must've missed DE 153" [the affidavit of compliance]. But the next day, Defense Counsel filed a motion and opposition falsely claiming Plaintiff had not "filed an affidavit of Compliance." What gives? Is this really the only response, because neither Plaintiff nor the undersigned have a clue. What is more, then weeks later, after the above episode, Defendant's Counsel would file an amended opposition maintaining the same affirmative misrepresentation to this Court.  The record is undeniable that Plaintiff has filed an affidavit of compliance with all required supporting documents

sworn under oath. ECF 153. Defendant makes the claim "there is nothing in the record indicating that Plaintiff […] filed an affidavit of compliance"—how else, other than in bad faith? Knowing it is false.  Plaintiff has complied with the statute, and properly served Defendant who has knowingly failed to answer timely without good cause. Therefore, default should be entered against her.

### 3.  SWORN COPIES OF THE RETURN RECEIPTS ARE FILED

Plaintiff has filed sworn copies of 4 signed return receipts addressed to the Defendant.  *See* ECF 153-17; *see also* ECF 153-18;  *see also* ECF 153-19; *see also* ECF 153-21. Notably, the signed return receipt addressed to Defendant at the second home she owns in Houston, TX, appears to display Defendant's signature. *See* 153-19.

It appears that Defendant may be trying to manufacture an issue from her refusal to accept the certified mail, return receipt sent to her Tallahassee Residence where she claims she is "unknown." ECF 153-15. However, it is well established that even under the old statute that "Florida courts excuse the signed-return-receipt requirement of Florida Statute § 48.161(1) if the putative defendant is actively evading service of process. *Jennings v. Montenegro*, 792 So. 2d 1258, 1261 (Fla. 4th DCA 2001); *Fernandez v. Chamberlain*, 201 So. 2d 781, 786 (Fla. 2nd DCA 1967)" *Burris v. Green*, No. 3:12-CV-521-MCR-EMT, 2015 WL 13937788, at *3 (N.D. Fla. Nov. 5, 2015).  *See also*, *Gulf Winds Fed. Credit Union v. Bldg. Comm., Inc.,*

No. 3:07-CV-468/RS-MD, 2009 WL 10676622, at *1 (N.D. Fla. Mar. 4, 2009) (stating that when "[the party] is concealing [itself], the requirement of filing a return receipt with the court would be obviated.") *Leviten v. Gaunt* , 360 So. 2d 112, 113 (Fla. 3d DCA 1978) (citing *Robb v. Picarelli* , 319 So. 2d 645 (Fla. 3d. DCA 1975))."

The record clearly establishes that Defendant "has concealed her whereabouts." ECF 153 ¶ 4. Further the record reflects that Plaintiff has filed 4 signed return receipts addressed to Defendant. Plaintiff also filed unsigned return receipts (ECF 153-16) and tracking information demonstrating that Defendant refused to accept the Notice of Service, summons, and amended complaint at the address where she claims to live and returned it "addressee unknown." ECF 153-15. Therefore, Plaintiff has complied with this requirement for service under Florida Statute § 48.161(1), and properly served Defendant who has knowing and willfully failed to answer timely. Therefore, default should be entered against her.

### 4.   THE AFFIDAVIT DEMONSTRATES NOTICE WAS SENT

Defendant boldly misrepresents that there is nothing in the record demonstrating that Plaintiff "sent notice to the defendant, via certified or registered mail, that substitute service has been effected through the Secretary of State." The record reflects that Plaintiff "sent copies of the Notice of Service, summons, and Amended Complaint to Defendant Ferrell by the U.S. Postal Service ("USPS"), certified mail, return receipt" to six different addresses for Defendant. ECF 153 ¶

22(a-f).  Copies of the notice that substitute service through the Secretary of State (ECF 153-8), summons (ECF 147), and amended complaint (ECF 54) sent to Defendant via certified mail return receipt are each in the record.  Defendant has not identified any basis for asserting otherwise.  Plaintiff has clearly met this statutory requirement, but Defendant simply refused to answer the amended complaint timely without good cause. Therefore, default should be entered against her.

### 5.  THE RECORD PROVES DEFENDANT IS CONCEALING HER WHEREABOUTS AND AN AMENDED COMPLAINT IS NOT REQUIRED

Notably, nowhere in the old version of § 48.161 is there any reference to a requirement to plead any facts in the complaint nor even a reference to requirements for complaints.  In fact, it appears that Defendant is desperate to convince the Court that the current version of § 48.161, and version in effect at the time of service, should not apply to this case because it explicitly provides, "The party effectuating service does not need to allege in its original or amended complaint the facts required to be set forth in the affidavit of compliance." Fla. Stat. Ann. § 48.161 (West).

According to the co-chairs of the Chapter 48 Task Force of the Business Law Section of the Florida Bar, who oversaw and directed the efforts going to the amendments forming the current version of § 48.161: these amendments "add[] specific requirements about the affidavit of due diligence that must be filed with the court, while eliminating any need for the complaint be amended to reflect those facts, a requirement *some courts* had imposed that the task force felt was duplicative and

unnecessary and simply caused delay in the litigation." [emphasis added]  Giacomo Bossa & James B. Murphy, Jr., *Recent Legislative Changes to Service of Process: A New Ball Game?*, Fla. B.J., Vol. 97, No. 3 May/June 2023, at 39, 41. Plaintiff cannot locate any case in this District where this Court imposed a requirement that the complaint or amended complaint plead the defendant was concealing their whereabouts, in order to effect service under any version of § 48.161. Indeed, this Court has ordered entry of default against a defendant served pursuant to § 48.161 where the complaint lacked any allegation Defendant concealed its whereabouts, and did so based solely on record evidence outside the complaint. *See Gulf Winds Fed. Credit Union v. Bldg. Comm., Inc.*, No. 3:07-CV-468/RS-MD, 2009 WL 10676622, at *1 (N.D. Fla. Mar. 4, 2009) (Granting entry of default "Upon review of Building Committee's Response (Doc. 58) and the affidavits filed in support thereof (Doc. 57), I now find ample evidence on the record of due diligence on the part of Building Committee in searching for Lafayette. The record satisfactorily establishes that the whereabouts of Lafayette is unknown and that Lafayette is likely concealing itself. Therefore, the filing of a return receipt with the court is unnecessary and Building Committee has complied with all requirements of section 48.161, Florida Statutes.")

Defendant alleges Plaintiff has failed to assert the Defendant is "concealing her whereabouts" but Plaintiff has specifically alleged that Defendant "has concealed her whereabouts by returning mail sent to her acknowledged Tallahassee

Residence as "address unknown" (*see* ECF 153-15) and has, and continues to, actively evade service of process—as described below, and as demonstrated by the series of unexecuted returns of service docketed in this matter (ECF 60) (ECF 64) (ECF 67) (ECF 68) (ECF 99) (ECF 121) (ECF 122) (ECF 150) (ECF 152)." ECF 153 ¶ 4.

The affidavits attesting "due diligence" by the deputies from LCSO and the Harris County Constables Office establish Defendant is not only avoiding service (*i.e..,* "SAW FEMALE RUN BY WINDOW. WOULD NOT ANSWER DOOR." ECF 152) but taunting LSCO (*i.e.,* "went to the door and saw Diop Kamau (don jackson, the defendant) sitting at his desk. He waved and made eye contact. he immediately got up and walked to the back of the house." ECF 122)  and misleading them (*i.e.,* "Deputy received a call from a private investigator representing the family. He stated the family lives in Florida and does not live at the address on the citation. He stated he got deputy's information from a family member." ECF 121) to evade service.

### 6. DEFENDANT HAS NOT COMPLIED WITH THE LOCAL RULES OR DEMONSTRATED GOOD CAUSE FOR LEAVE TO ANSWER

Defendant never requested leave to file an answer in her opposition to entry of default. ECF 157.  Without ever requesting consent from Plaintiff for leave to file an "amendment" to her opposition or to file her answer out of time, Defendant

nevertheless filed an "amended" opposition adding, "Defendant respectfully requests leave to file an answer to the complaint."  ECF 160.

First, the "amended" opposition is not properly before this Court and should be stricken because Defendant never sought leave to file it from this Court. This may seem like a small rule violation, but it far from stands alone: Defense Counsel has repeatedly flaunted and violated the rules in this case to the extent that this Court has noted, "Defendant should strive to comply with all applicable local rules going forward, as this Court may not show such leniency in the future." ECF 106.  This particular Defendant has flaunted this court by shamelessly evading service and other courts by outright refusing to comply with orders to the extent that she has been held in contempt of court. *See* ECF 1-1.  Continuing to show leniency will only invite this Defendant to continue to ignore the rules and law to delay this case and continue her tortious conduct as she has done for years now.

Second, and most importantly, Defendant has not even tried to demonstrate the "good cause" required to be granted leave to file an answer out of time.  Fed. R. Civ. P. 6. Defendant has not made an effort to demonstrate "good cause" because she cannot. Indeed, the facts and record demonstrate a diametrically opposed view: she has acted wholly in bad faith in refusing to timely answer the amended complaint, and wholly in bad faith in pushing the parties to this juncture.  The Defendant was properly served in this case twice. ECF 5; ECF 153-8.  Both Defendant and her

attorney were on actual and legal notice of the deadline to file a response to the amended complaint, but they *chose* to ignore it to ensure further delay of this case. ECF 153-22. That is not an assumption, it is unequivocal: neither Defendant nor her counsel can deny they knew long before the deadline to answer that Defendant has been served pursuant § 48.161. *Id.* Defendant has not offered any explanation for why she did not move to quash service or otherwise respond to the amended complaint before the deadline, and she cannot do so, because she refused in furtherance of bad faith efforts, to further delay this case as she has for years now.

Further, while evading service, Defendant influenced and delayed the outcome of this litigation through her wholly owned and operated corporation Defendant Telitha—that is, she did so through participation until it was time for her to be deposed, when she terminated her attorneys to avoid the risk of being personally served. *See* ECF 153-1. Worse still, while avoiding, evading, and obstructing lawful service of process, Defendant continued to publish defamatory and infringing material at her website lifesentenceontheinternet.com, as she does to this day.

Granting leave to answer out of time at this late and delayed juncture will only ensure Defendant continues to engage in bad faith dilatory misconduct if Plaintiff is forced to proceed through the discovery phase this late in the litigation—discovery

that could have long been completed alongside the other parties, but for the bad faith strategic evasion. Therefore, default should be entered against Defendant Ferrell.

## CONCLUSION

Having been properly served twice, Defendant continues to delay this case in bad faith by ignoring the deadline for responding to the amended complaint, when there is no dispute her attorney was on notice of the same, and belatedly sought to quash service by advancing arguments that were premised on knowingly affirmative misrepresentations to this Court. ECF 153-22. Any doubt that Defendant's actions in this case are not demonstrative of her belief that she is both untouchable and above the law is immediately stamped out by the fact that she has for year engages similar misconduct before other courts—to the point of being held in contempt—but she continues to engage in the same, as she is sure to do going forward. *See* ECF 1-1.

Considering the Defendant's undeniable misconduct in evading service, coupled with her bad faith failure to timely respond to the complaint, and inability to demonstrate "good cause" for leave to file an answer out of time, the Court should enter default against Defendant Ferrell. If ever there was context for default, this is that context, and this is that party.

Date: August 10, 2023

*Janakan Thiagarajah*
Janakan Thiagarajah, Esq.
(FBN: 1040171
1 Alhambra Plaza, PH Floor
Coral Gables, FL 33134

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES</u>

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C) and that the foregoing complies with the word limit in Local Rule 7.1(F); the foregoing contains 5,833 words, excluding the case style, signature block, and certificates. Further, the undersigned counsel has conferred in good faith with defendant's counsel pursuant to Local Rule 7.1(B) but has been unable resolve the issues arising from Defendant Ferrell avoidance of service and refusal to answer the amended complaint.

By: /s/ *Janakan Thiagarajah*
Janakan Thiagarajah

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of August 2023, a copy of the foregoing REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT was served by the court's electronic filing system to the following counsel and corporate representatives of record, and served via First Class Mail Postage Prepaid to the Defendant Party, as listed in the service below:


Carlo D. Marichal, Esq.
Banker Lopez Gassler P.A.
Fort Lauderdale Office Managing Shareholder
1200 S. Pine Island Road, Suite 170
Plantation, FL 33324
cmarichal@bankerlopez.com
*Counsel for Defendant Diop Kamau and Tyra Ferrell*

**TELITHA ENTERTAINMENT CORP.**
Representative Contact
Email: Sgtdcj@icloud.com
Mailing address: 3425 Bannerman Rd., #164
Tallahassee, FL 32312
Telephone: (805) 566-7960
*Defendant Telitha's Representative Contact (as filed with this Court by their prior counsel)*

**TYRA FERRELL AKA (TYRA RASMUS) (TYRA JACKSON)**
9217 Hampton Glen Court
Tallahassee, Fl 32312
*Defendant*


By:
/s/ *Janakan Thiagarajah*
Janakan Thiagarajah